IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH G. AULISIO,          :
                            :
       Plaintiff          :
                            :
    v.                      :     CIVIL NO. 4:CV-14-196
                            :
ANN CHIAMPI, ET AL.,        :     (Judge Brann)
                            :
       Defendants         :

## ORDER

March 4, 2015

## Background

This pro se civil rights action was filed by Joseph G. Aulisio, regrading his confinement at the Retreat State Correctional Institution, Hunlock Creek, Pennsylvania (SCI-Retreat). Service of the Complaint was previously ordered. Named as Defendants are three SCI-Retreat employees: Education Principal Ann Chiampi; Librarian Karen Stroup; and Hearing Examiner Anne Plaska.

According to the Complaint, Plaintiff had a prison employment as a law clerk in the SCI-Retreat library. On May 24, 2012, Principal Chiampi allegedly singled out the Plaintiff for harassment while the prisoner was at work. Aulisio claims that as part of the harassment, Chiampi asked him whether two closed file

1

folders which were sitting on his desk were personal or work related.  Plaintiff

states that he responded numerous times that the folders were work related and

that he was studying for a scheduled job related test.  Chiampi purportedly

responded by seizing both folders.  Approximately ten (10) minutes later, Chiampi

returned for the apparent purpose of returning one of the folders.   However,

Aulisio alleges that when he told Chiampi that the confiscation of the other folder

was improper because he was engaged in constitutionally protected activity, she

became angry, decided to keep both folders, and ordered the prisoner to return to

his cell block. [1]

The initially confiscated folder is described as being a 74 page civil rights

manuscript containing hundreds of prison litigation cases with a copy of the Bill of

Rights as the first page.[2]  See Doc. 1, Section  IV, ¶ 8.  The Complaint contends

that the confiscation of the folder caused Plaintiff difficulty with respect to his

ability to pursue litigation.  See id.  Moreover, on June 13, 2012, Plaintiff

---

[1]  Plaintiff describes the confiscation as enforcement of "a never before
enforced rule."  Id. at ¶ 12.

[2]  Aulisio also indicates that the confiscated materials were a literary work
which he was a writing and intending to have published as a handbook for inmates
wishing to pursue civil rights claims.
The confiscation slip given to Plaintiff notes that the items confiscated were
stated by inmate as being work related.  See Doc. 1, p. 25.

discovered that Chiampi did not follow proper procedure with respect to the confiscation. Specifically, on said date one of the folders was apparently returned to the Plaintiff and he was told that the initially confiscated folder had not been turned into "Control" as required under prison policy. Id. at ¶ 10. The Complaint assumes that the initially confiscated folder was destroyed in an effort to protect Aulisio from pursuing litigation against Chaimpi in violation of his right of access to the courts.

In addition to the confiscation of the folders, the Plaintiff was issued a purportedly retaliatory misconduct charge by Librarian Stroup. Specifically, the inmate was charged with lying to an employee and possession of contraband, i.e, having two folders of material which were not related to Plaintiff's job duties and did not belong in the library. The Complaint also raises a due process claim that Hearing Examiner Plaska who presided over the ensuing disciplinary proceedings was biased.

Aulisio next indicates that Chiampi's actions were also discriminatory and a violation of his equal protection rights as he was treated differently from his two inmate co-workers who also similarly had file folders on their desk.[3] Plaintiff

---

[3]   Exhibits attached to the Complaint indicate that one of the folders was eventually returned to Plaintiff.

further contends that the Grievance Policy of the Pennsylvania Department of
Corrections (DOC) is unconstitutional because it is confusing in that a grievance
alleging violation of civil rights cannot be filed if a misconduct was issued.  <u>See</u>
<u>id.</u>, ¶ 1.  Aulisio's final contentions is  claims that the Defendants engaged in a
conspiracy and violated his right of freedom of speech.  <u>See</u>  <u>id.</u> at ¶¶ 17-18.

The Complaint seeks compensatory and punitive damages as well as
declaratory relief.  Presently pending is Defendants' motion seeking dismissal of
the Complaint for failure to state a claim.  <u>See</u>  Doc. 13.  The opposed motion is
ripe for consideration.

## Discussion

Defendants claim entitlement to entry of dismissal on the grounds that: (1)
Plaintiff has no constitutional right to a grievance system; (2) a due process claim
has not been state against Hearing Examiner Plaska; (3) the Complaint does not
allege a viable retaliation claim; and (4) Plaintiff fails to state an equal protection
claim.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of
complaints that fail to state a claim upon which relief can be granted.  When ruling
on a motion to dismiss under  Rule 12(b)(6), the court must "accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct. at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations

5

respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Grievance Policy**

Defendants initially argue that the DOC's grievance policy is constitutional and  prisoners enjoy no constitutional right to a grievance policy. See Doc. 14, p. 3. A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

It is well settled that inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1

(3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir.

2001)("[T]he existence of a prison grievance procedure confers no liberty interest

on a prisoner.")   Consequently, any attempt by Plaintiff to establish liability

against the Defendants solely based upon the substance or lack of response to his

institutional grievances does not by itself support a constitutional due process

claim.  <u>See</u> <u>also</u> <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir.

2005)(involvement in post-incident grievance process not a basis for § 1983

liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison

grievance procedure does not confer any substantive constitutional rights upon

prison inmates, the prison officials' failure to comply with grievance procedure is

not actionable).

     As noted by Defendants, Plaintiff's assertion that he felt that the DOC's

grievance procedure was confusing because it employs a separate procedures for

administrative appeals of misconduct proceeding related claims does not by itself

warrant a finding that the DOC's grievance process is unconstitutional.

**<u>Due Process</u>**

     Hearing Examiner Plaska presided over the misconduct proceeding

stemming from the May 24, 2012 incident.  Plaska found Plaintiff guilty of both

charges (lying to an employee and possession of contraband) and sanctioned him

to a fifteen (15) day period of cell restriction and loss of his institutional job in the library.[4]  Aulisio alleges that his due process rights were violated by Plaska because the Hearing Examiner was biased.  Defendants argue that Plaska is entitled to entry of dismissal because the sanctions imposed did not constitute an atypical and significant hardship.  See Doc. 14, p. 6.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   A protected liberty interest may be created by either the Due Process Clause itself or by state law.  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  Wolff, 418 U.S. at 563-71.  The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial

_____

[4]   Exhibits attached to the Complaint substantiate that those were the sanctions imposed.

decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.  The United States Court of Appeals for the Third Circuit, and other courts have applied the Wolff principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead in disciplinary or administrative segregation.  E.g., Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994); Griffin v. Spratt, 969 F.2d 16 (3d Cir. 1992); Cook v. Lehman, 863 F. Supp. 207 (E.D. Pa. 1994).

However, the United States Supreme Court's subsequent decision in Sandin marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  Sandin, 515 U.S.  at 481.  In Sandin, the Supreme Court reasoned,

inter alia, that "[d]iscipline by prison officials in response to a wide range of

misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of

an inmate's confinement in disciplinary segregation was found similar to that of

inmates in administrative segregation and protective custody at his prison. Id. at

486.

Focusing on the nature of the punishment instead of on the words of any

regulation, the Supreme Court held that the procedural protections in Wolff were

inapplicable because the "discipline in segregated confinement did not present the

type of atypical, significant deprivation in which a state might conceivably create a

liberty interest." Id. The Sandin Court relied on three factors in making this

determination: (1) confinement in disciplinary segregation mirrored conditions of

administrative segregation and other forms of discretionary confinement; (2) based

on a comparison between inmates inside and outside segregation, the state's action

in placing the inmate there did not work a major disruption in the inmate's

environment; and (3) the state's action did not inevitably affect the duration of

inmate's sentence.

Courts within this circuit, applying Sandin in various actions, have found no

merit in procedural due process claims presented regarding institutional

disciplinary hearings which result in disciplinary custody placement. See Torres

v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably

anticipate transfer to disciplinary custody, placement in segregation as a

disciplinary sanction did not implicate a protected liberty interest); Smith v.

Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of

disciplinary confinement did not implicate liberty interest); Vorhauer v. Conrad,

No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement

in disciplinary custody for ninety days in accordance with Department of

Corrections procedures did not give rise to a protected liberty interest).

     Based upon an application of the rules of law set forth in Sandin and the

subsequent line of decisions cited above the sanctions imposed by Defendant

Plaska, fifteen (15) days of cell restriction and loss of institutional employment

were not of such magnitude as to implicate a protected liberty interest under

Sandin.  Accordingly, Defendant Plaska's request for entry of dismissal will be

granted.

**Retaliation**

     Plaintiff alleges that the seizure of his two folders and related issuance of a

misconduct charge was undertaken in retaliation for his engagement in

constitutionally protected conduct.  Defendants argue that there were legitimate

penological reasons behind those actions.  See Doc. 14, p. 9.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[5] See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to the Defendants to prove by a preponderance of the evidence that they "would have

---

[5]   Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

made the same decision absent the protected conduct for reasons reasonably related to penological interest." <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  <u>Rauser</u>, 241 F.3d at 334.

Defendants contend that "Plaintiff failed to allege the first element of a retaliation claim" because he does not allege that he filed a prior complaint or grievance.  Doc. 14, p. 1.  Filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  <u>Anderson v. Davila</u>, 125 F.3d 148, 161 (3d Cir. 1997); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373-74 (3d Cir. 1981).  The submission of grievances is also constitutionally protected conduct.  <u>See</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003).   Plaintiff does not allege that the purported retaliatory initial taking of his folders were taken in response to his initiation of grievances and civil suits.   However, Aulisio does contend that the decision by Chiampi not to return one of the folders occurred after he verbally threatened to file a lawsuit.[6]  At this juncture in the proceedings, the Court believes that the Plaintiff has shown that his constitutionally protected activity was a

_____

[6]  <u>See</u> Doc. 1, Section IV, ¶ 7.

motivating factor for those limited acts of adverse action with respect to the taking

of the second folder, after considering the appropriate <u>Rauser</u> factors.

The second prong of <u>Rauser</u> adverse action requires that Aulisio allege that

he suffered adverse action sufficient to deter a person of ordinary firmness from

exercising his First Amendment rights.  The Defendants concede that the issuance

of a misconduct by Defendant Stroup satisfies this requirement. <u>See</u> Doc. 14,  p.

12.  The third <u>Rauser</u> prong requires a prisoner must prove that his constitutionally

protected conduct was a substantial or motivating factor in the decision to

discipline him.  With respect to the confiscation of the second folder, the Plaintiff

alleges that the folder was going to be returned to him until he expressed an

intention to initiate legal action against Chiampi.  Based upon that assertion, the

contention that Defendant Chiampi retaliated against Plaintiff by confiscating the

second folder is sufficient to withstand scrutiny under Rule 12(b)(6).

However, since the Complaint clearly acknowledges that Plaintiff falsely

told Chiampi that the material in the folders was work related, Aulisio's alleged

participation in  constitutionally protected conduct was not a substantial or

motivating factor in the decision to discipline him.  On the contrary, the issuance

of a misconduct charge and the subsequent finding of guilt on said charge would

have been undertaken since the Complaint shows that Plaintiff made a false

statement to Chiampi and was possessing personal materials when he was supposed to be performing his institutional employment duties.

Defendants Plaska and Stroup's request for dismissal of the retaliation claims will be granted.  The contention that Defendant Chiampi retaliated against Plaintiff by confiscating the second folder will proceed.

## Equal Protection

According to the Complaint, Plaintiff's rights under the Equal Protection Clause were violated because he was treated differently from his two inmate co-workers who similarly had file folders on their desks during the same relevant time period which were not subjected to confiscation.

A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination.[7] Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986).  However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." Reed v. Reed, 404 U.S. 71, 75 (1971).  The Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated

---

[7] The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deny any person within its jurisdiction the equal protection of the laws."

should be treated alike.'" <u>Artway v. Attorney Gen.</u>, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985)); <u>see also</u> <u>Kuhar v. Greensburg-Salem Sch. Dist.</u>, 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

Plaintiff's present equal protection claim does not involve a classification based on race, religion, or national origin.  There are no facts alleged in the Complaint which could support a claim that any Defendants engaged in intentional or purposeful discrimination or that they treated Plaintiff differently from similarly situated individuals on the basis of his race, religious beliefs, or some other impermissible reason.  There are simply no factual averments alleged which could support a claim that any of the three Defendants engaged in actions which intentionally discriminated against the prisoner.  Based on the standards announced in <u>Wilson</u> and <u>Artway</u>, a viable equal protection claim is not set forth in the Complaint.

**Access to the Courts/Conspiracy/Freedom of Speech**

The Complaint also includes a claim that the actions of Defendants in confiscating his two folders violated his right of access to the courts.  The

Complaint includes a vague assertion that the Defendants engaged in a conspiracy. <u>See</u> Doc. 1, Section IV, ¶ 17.  There is also a claim that Defendants violated the Plaintiff's right of freedom of speech.   <u>See</u> <u>id</u>. at ¶ 18.

Although Defendants' pending motion contends that Plaintiff did not suffer any adverse action, they do not specifically address the access to the courts, conspiracy, and freedom of speech claims against Defendant Chiampi. Accordingly those claims will also proceed.  An appropriate Order follows.


BY THE COURT:

  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge