# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH G. AULISIO,          :
                                 :
          Plaintiff              :
                                 :
          v.                  :    No.: 4:14-CV-196
                                 :
ANN CHIAMPI, ET AL.,        :    (Judge Brann)
                                 :
          Defendants       :

## MEMORANDUM OPINION

### September 21, 2017

## I.  BACKGROUND

Joseph G. Aulisio, an inmate presently confined at the Retreat State Correctional Institution, Hunlock Creek, Pennsylvania (SCI-Retreat) initiated this *pro se* civil rights action.  Named as Defendants are three (3) SCI-Retreat employees:  Education Principal Ann Chiampi, Librarian Karen Stroup, and Hearing Examiner Anne Plaska.

By Memorandum and Order dated March 4, 2015, Defendants' motion to dismiss the complaint was partially granted.  *See* Doc. 20.  Specifically, this Court agreed that dismissal was warranted on the claim that the DOC's grievance procedure was unconstitutional as well as the retaliation allegations against Defendants Plaska and Stroup. Dismissal was also granted with respect to the due process claims against Hearing Examiner Plaska and the contentions of denial of

equal protection.  As a result, Aulisio's surviving claims are (1) a retaliatory

confiscation of the second folder by Education Principal Chiampi; (2) denial of

access to the courts; (3) conspiracy; (4) violation of Plaintiff's right of freedom of

speech.

It is undisputed that Aulisio was employed as a law clerk/legal reference

aide in the SCI-Retreat library on May 24, 2012.  According to the Complaint, on

that morning the Plaintiff was singled out for harassment by Education Principal

Chiampi.  Specifically, it is alleged that Chiampi entered the library asked Aulisio

whether two closed file folders which were sitting on his work desk were personal

or work related.  Aulisio maintains that although he responded numerous times

that the folders were work related and that he was studying for a scheduled job

related test Chiampi seized both folders. Plaintiff describes the confiscation as

being enforcement of "a never before enforced rule."  Doc. 1, Section  IV,  ¶ 12.

One of the confiscated folders is described by Plaintiff  as a seventy-four

(74)  page civil rights manuscript containing hundreds of prison litigation cases

with a copy of the Bill of Rights as the first page.[1]  *See id.*, ¶ 8.  Aulisio adds  that

this manuscript was intended to be published as a handbook for inmates wishing to

pursue civil rights claims.  The second folder is described as consisting of

---

[1]      The confiscation slip given to Plaintiff notes that the items confiscated were stated by the
inmate as being work related. *See* Doc. 1, p. 25.

handwritten notes.

Approximately ten (10) minutes after seizing the folders, Chiampi purportedly returned for the purpose of returning the folder containing the handwritten notes to the Plaintiff. However, when Aulisio informed Chiampi that the confiscation of the other folder (manuscript) was improper because he was engaged in constitutionally protected activity, Chiampi allegedly became angry, decided to keep both folders as a retaliatory measure, and ordered the prisoner to return to his cell block. As a result of the incident Aulisio was issued a misconduct charge by Librarian Stroup which charged him with lying to an employee and possession of contraband. He was later found guilty of the charge by Hearing Examiner Plaska.

Aulisio contends that the improper confiscation of the manuscript and notes impeded his ability to pursue litigation. On June 13, 2012, Plaintiff purportedly discovered that Chiampi did not follow proper procedure with respect to the confiscation. Specifically, on that date the folder containing the handwritten notes was apparently offered back to the Plaintiff and the inmate was told that the other confiscated folder (manuscript) had not been turned into "Control" as required under prison policy. *Id*. at ¶ 10. The Complaint assumes that the confiscated manuscript folder was destroyed in an effort to prevent Aulisio from pursuing

litigation against Chiampi in violation of his right of access to the courts.[2]

Aulisio's other surviving claims contend that Defendants engaged in a conspiracy and violated his right of freedom of speech.  *See  id.* at ¶ ¶ 17-18.  The Complaint seeks compensatory and punitive damages as well as declaratory relief.

Presently pending is the Remaining Defendants' motion for summary judgment.  *See* Doc. 69.  The opposed motion is ripe for consideration.  For the reasons that follow, the motion will be granted.

## II.    DISCUSSION

Defendants claim entitlement to entry of summary judgment on the grounds that: (1) the undisputed facts show that the confiscation of Plaintiff's documents was not retaliatory; (2) the Complaint does not allege a viable denial of access to the courts claim; (3) Defendants' action did not violate the inmate's right to freedom of speech; and (4) Plaintiff cannot prove a conspiracy claim.

### A.    Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d

---

[2]  It is unclear as to whether the alleged second folder was eventually returned to Plaintiff.  The parties acknowledge that legal materials confiscated on the day in question were offered to Aulisio at least twice.

Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial." *Celotex,* 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### B. Retaliation

Defendants Plaska and Stroup's request for dismissal of the retaliation claims against them was granted by this Court's March 4, 2015 Memorandum and Order. Aulisio's remaining limited retaliation claim alleges that Chiampi changed her mind about returning legal property to him because it followed his threat to file a lawsuit against her.

The pending summary judgment motion asserts that because there "were no ongoing hostilities between the two parties" at the time of the confiscation, a viable retaliation claim has not been asserted. Doc. 71, p. 6. Defendants add that the allegation of retaliation fails because the confiscation was not undertaken for any improper or retaliatory reason and it was Defendant Stroup who issued Aulisio a misconduct. Finally, they argue that since Aulisio was offered the return of the confiscated materials at a later date, it was his own conduct which caused him to suffer adverse action.

In support of their argument, Defendants have submitted a declaration under penalty of perjury signed by Defendant Chiampi. *See* Doc. 72, p. 82. Chiampi acknowledges that she was employed as the SCI-Retreat Corrections School Principal during the relevant time period. She indicates that her duties included making rounds in the prison's Educational Building which housed the library where the Plaintiff was employed. Chiampi states while performing that task in the library on the morning of May 24, 2012 she noticed that all the inmates were performing janitorial duties with the exception of Aulisio, who was using the photocopying machine.

Upon further investigation, Chiampi discovered that although Plaintiff indicated he was performing a work related duty, he had not been assigned any photocopying duties by his supervisor, Librarian Stroup. As a result, the Defendant ordered the Plaintiff "to get to work." *Id*. at p. 83, ¶ 4. Aulisio put away his copies and walked away from the photocopier. As Chiampi was subsequently preparing to exit the library, she noticed that while the other inmates were still performing janitorial duties, Plaintiff was now on a law library computer. When she questioned Aulisio about this activity, he repeatedly stated that he was doing a work related task and became "confrontational and argumentative" when Chaimpi asked if she could see his folder. *Id*. at ¶ 6. Chiampi notes that she only recalls Aulisio possessing one folder. Chiampi took

the folder which Aulisio was using and gave it to Stroup to determine if the prisoner was doing personal work. Chaimpi then escorted Aulisio from the library and instructed him to return to his housing unit. At this juncture, Aulisio admitted that his folder contained personal work. Chiampi contends that she then told Aulisio "to get the work from Ms. Stroup and to return" to his housing block. *See id.* at ¶ 6.

According to Chiampi, Aulisio "went back into the library and then came out smiling and stating that 'there is only one folder, not two, and now I'm going to sue you.'" *Id.* Chiampi concludes that because inmates are not authorized to work on their personal matters while on duty and are prohibited from bringing personal material to the library when they are working, the folder was properly considered to be contraband by Stroup. Chiampi adds that she did not destroy any material belonging to the Plaintiff.

Also submitted for consideration is a declaration under penalty of perjury by SCI-Retreat Librarian Karen Stroup. *See id.* at p. 87. Stroup states that part of her duties involved supervision of the library workers, including legal reference aides such as Aulisio. Stroup avers that pursuant to Pennsylvania Department of Corrections (DOC) regulations, "library workers are not allowed to bring personal materials to the library and they are not to complete legal work during their work hours." *Id.* at ¶ 3. Stroup adds that upon being hired as a legal reference aide, the

Plaintiff was given a written handbook advising him of his duties and work restrictions.

Stroup reiterates Chiampi's version of events which occurred on the date in question, adding that at that time of the incident all library workers were to be cleaning the library. However, Aulisio was not performing that duty but rather was using the photocopier when Chiampi arrived. After being directed to return to work and while the other prisoners were still busy with their cleaning duties, the Plaintiff began using a computer.

Stroup states that in accordance with her duties as Librarian, "I confiscated one folder of legal materials from him." *Id*. at ¶ 7. The materials did not appear to be either related to the legal reference aide exam or necessary for his work as a legal reference aide. She provided Aulisio a confiscation receipt because his folder contained "personal notes and photocopies." *Id*. Stroup further admits that she issued a misconduct to the Plaintiff because he was told not to bring personal material to the library and for initially falsely stating that the material was work related. Stroup adds that the folder was given to the Shift Commander and "I took nothing out of the folder and kept nothing from it." *Id*. at ¶ 10. Moreover, "I do not recall seizing more than one folder of legal material from Aulisio." *Id*. Finally Stroup elaborates that she did not destroy the folder and does not have knowledge of its whereabouts.

Accompanying Stroup's declaration is a copy of the relevant DOC regulation prohibiting legal reference aides form working on personal legal matters while on duty. *See id.* at Exhibit A. A copy of the misconduct charge is also attached.

In his deposition testimony, Aulisio reiterates that Chiampi took two folders from him on the date in question. As noted above, one folder contained a 74 page typewritten manuscript on prisoner's civil rights which he hoped would be published. *See* Doc. 72, p. 25. The second folder is described by the inmate as a pile of handwritten notes regarding questions which he was often asked by fellow prisoners. *See id.* at p. 27. Plaintiff states that when Chiampi approached, he along with Stroup were photocopying materials from one of his folders. *See id.*, p. 29. Aulisio admits that Chiampi asked him what he was copying and directed him to assist in the cleaning of the library. Shortly thereafter Chiampi left the library with the two folders. According to Aulisio, Chiampi returned ten minutes later and attempted to return the handwritten notes folder. Plaintiff testified that he refused the offer because he was concerned about the manuscript.[3] When Chiampi denied the existence of a second folder, Aulisio threatened to sue which allegedly prompted Chiampi to renege on returning the handwritten notes file describing it

---

[3] A copy of a written statement by Aulisio which accompanies the Complaint only describes the confiscated legal material as "notes full of nothing but case law." Doc. 1, p. 11.

as contraband.  Plaintiff's deposition testimony maintained that Stroup was not involved in the exchange and her whereabouts at that point were unknown.

There is a disputed issue of material fact as to whether one or two folders were confiscated.  Chiampi and Stroup's version of the incident clearly differs substantially from Aulisio's.  The Principal and Librarian only recall one folder; they also assert that it was Defendant Stroup who made the decision that the single folder should be confiscated as contraband.

There are a series of discrepancies with Plaintiff's story.  For instance, in his Complaint Aulisio states that Chiampi approached him and seized two closed file folders which were laying on his desk.  Doc. 1, p. 3.  In his deposition, Plaintiff states that when Chiampi approached, he along with Stroup were photocopying materials from one of his folders.  *See* Doc. 72, p. 29.  Plaintiff also states that it was Chiampi who refused to return the confiscated materials.  However, his opposing brief states that Stroup made an "instant confiscation of my legal knowledge materials."  Doc. 75, ¶ 3.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id*.(quoting *Allah v. Seiverling*, 229 F.3d

220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action

"sufficient 'to deter a person of ordinary firmness' from exercising his First

Amendment rights."  *Id*. (quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir.

2000)).  Third, a prisoner must prove that "his constitutionally protected conduct

was 'a substantial or motivating factor' in the decision to discipline him."  *Id.* at

333-34(quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after a complaint or grievance is filed

is relevant, but not dispositive, for the purpose of establishing a causal link

between the two events.[4]  *See Lape v. Pennsylvania*, 157 Fed. App'x. 491, 498 (3d

Cir. 2005).

   Once a plaintiff has made a *prima facie* case, the burden shifts to the

defendants to prove by a preponderance of the evidence that they "would have

made the same decision absent the protected conduct for reasons reasonably

related to penological interest."  *Carter v. McGrady*, 292 F.3d 152, 158 (3d. Cir.

2002)(internal quotation and citation omitted).  When analyzing a retaliation

claim, it must be recognized that the task of prison administrators and staff is

difficult, and the decisions of prison officials require deference, particularly where

---

[4] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will
temporal proximity, standing alone, support an inference of causation.  *Krouse v. American
Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

prison security is concerned. *Rauser,* 241 F.3d at 334.

Here Aulisio raises claims of retaliation with respect to the taking of his legal material and Chiampi's alleged change of heart when she would not return the second folder after he threatened litigation. Despite the existence of some disputed facts, it is apparent to this Court that entry of summary judgment is appropriate with respect to the assertions of retaliation.

First, it is undisputed that there was no animosity between Plaintiff and the Defendants prior to the incident. Second, the undisputed record shows that at the time of the incident Aulisio was supposed to be performing his duties as legal reference aide. However, he was in fact working on a manuscript which he apparently intended to have published. As such, Plaintiff's possession of his personal legal materials at that point in time was in violation of DOC regulations. Furthermore, Aulisio ignored a direct order to assist in cleaning the library and initially lied about his activities there. Chiampi and Stroup also indicate that in their opinion, Aulisio became confrontational and argumentative.

Thereafter, Plaintiff alleges that some materials were going to be returned to him until he expressed an intention to initiate legal action against Chiampi. The declarations of Chiampi and Stroup do not indicate that such an exchange occurred. Rather, they state that a single folder was taken by Chiampi after the

Defendant was found violating DOC regulations and had become confrontational and argumentative. Chiampi indicates that this folder was given to Stroup. According to the Principal when Aulisio admitted that the seized materials were personal, Chiampi told him he could get his papers from Stroup and return to his cell. After refusing to accept the material from Stroup, Plaintiff told Chaimpi that a folder was missing and he was going to pursue legal action.

Stroup states that after she received the materials from Chiampi she made a determination that they should be confiscated and a misconduct should be issued to the inmate. Both Defendants deny destroying any of Plaintiff's personal materials. As such, it is apparent that Plaintiff's participation in constitutionally protected conduct was neither a substantial nor motivating factor in the decision to discipline him.

The initial *Rauser v. Horn* requirement requires that Aulisio show that he was engaged in a constitutionally protected activity. It is undisputed that there was no animosity between Plaintiff and the Defendants prior to the incident. Second, the undisputed record also shows that at the time of the incident Plaintiff was supposed to be performing his duties as legal reference aide. The undisputed record further shows that he was in fact working on a manuscript which he intended to have published.

In this case the initial confiscation of Plaintiff's materials occurred before he voiced any intent to file a grievance; as such, Aulisio was not engaged in a constitutionally protected conduct. *See Watson v. Rozum*, 834 F. 3d 417, 422 (3d Cir. 2016). Aulisio has failed to satisfy the first prong of *Rauser* with respect to any of his contentions of retaliation related to the initial taking of his materials.

The second prong of *Rauser* requires that Aulisio allege that he suffered adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. It is undisputed that the materials which Chiampi allegedly refused to return were thereafter offered back to the Plaintiff by his Unit Manager and that Aulisio refused to accept them. Here, the *Rauser* adverse action requirement was not met since the alleged retaliatory act was *de minimis*. *See McKee v. Hart*, 436 F.3d 165, 170-71 (3d Cir. 2006).

The third *Rauser* prong requires that a prisoner prove that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. It is apparent that the actions taken against Aulisio resulted from his admitted violation of DOC regulations by doing personal work and bringing personal materials into the library while on duty. Moreover, the undisputed record clearly establishes that Plaintiff falsely told Chiampi and Stroup that the material at issue was work related when it was not and then engaged in

conduct which they deemed confrontational and argumentative.   In his deposition testimony, Plaintiff admits that when Chiampi offered to return a folder of legal materials, he did not accept the offer but rather accused the her of withholding a portion of his legal documents.  *See* Doc. 72, p. 31.

It is my determination that none of the actions taken against Plaintiff on May 24, 2012 were retaliatory.  Rather, these disciplinary actions were based upon his admitted violations of DOC rules and his conduct and behavior during the incident.   With respect to the surviving claim of retaliation against Chiampi, Plaintiff did not satisfy the adverse action prong of *Rauser*. Nor has he satisfied the third prong of *Rauser* since it was not his exercise of constitutionally protected conduct which was a substantial or motivating factor here, but rather his refusal to accept the return of the folder/contraband.  Summary judgment will be granted as to the retaliation claim against Chaimpi.

## C.    Access to the Courts

Defendants next argue that entry of summary judgment is appropriate because the Plaintiff cannot prove a denial of access to the courts claim since the undisputed facts show that he did not suffer an actual injury to a non-frivolous legal claim.  *See*  Doc. 71, p. 8.  Aulisio counters that the confiscation of his legal

materials interfered with his ability to initiate future litigation.[5]  *See* Doc. 75, pp.4-5.

It is well-settled that prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services.  *Bounds v. Smith*, 430 U.S. 817, 821-25 (1977).  Inmates have a right to send and receive legal mail which is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts.  "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees."  *Proudfoot v. Williams*, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The United States Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under *Bounds*, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation efforts.  Under the standards mandated by *Lewis,* in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has

---

[5]  Plaintiff indicates that the missing folder included a case which would allow him to prove exhaustion.  *See* Doc. 1, ¶ 11.  There is no non-exhaustion argument pending before this Court.

suffered actual injury.  *See Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that *Lewis* effectively requires a showing of actual injury where interference with legal mail is alleged).

Following a detailed review of the undisputed record, it is clear to this Court that Aulisio has failed to adequately demonstrate that he suffered any injury to a non-frivolous legal claim as required under *Lewis*.  Rather, the Plaintiff asserts that the confiscated personal legal materials were part of a handbook for *pro se* inmate litigants which he was writing.  Plaintiff does not dispute that at the time of the confiscation, he had no pending litigation, did not miss any legal deadlines, and was not using the confiscated materials to prepare a lawsuit.  Moreover, Aulisio's circular argument that the confiscation interfered with his future ability to pursue litigation based upon the confiscation itself is meritless.  The denial of the opportunity to continue work on the writing of a book simply does not set forth a viable claim of denial of access to the courts.  Summary judgment will be granted with respect to the claim of denial of access to the courts.

### D.    Freedom of Speech

Defendants next argue that there was also no violation of Aulisio's First Amendment right of freedom of speech.  *See* Doc. 71, p. 11.  They explain that the confiscation of Plaintiff's legal materials was undertaken solely because he was

using those documents in violation of prison rules. Specifically, inmate library workers such as Aulisio are prohibited from working on personal matters while on duty. Since the confiscation was reasonably related to a legitimate penological interest (i.e. compliance with prison regulations), Defendants conclude that there was no constitutional violation.

Inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *DeHart v. Horn*, 227 F.3d 47, 50 (3d Coir. 2000) (quoting *Bell v. Wolfish*, 441 U.S. 441 U.S. 520, 545 (1979)). Prisoners, as is well recognized, must be afforded "reasonable opportunities" to exercise their freedoms guaranteed by the First Amendment. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).

When confronted with a similar issue, the United States Court of Appeals for the Third Circuit recognized that any restrictions placed on an inmate's First Amendment rights must be accomplished in a neutral manner. *Abu-Jamal v. Price*, 154 F.3d 128, 133 (3d Cir. 1998). It held that a limitation placed on an inmate's right to free speech, if "a valid response to a potential security threat" was constitutionally acceptable. *Id.* at 134.

The United States Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also O'Lone v. Shabazz*, 482 U.S. 342 (1987)(reiterating recognition of the *Turner* standards as being the applicable test for determining the constitutionality of prison regulations). These interests include: "deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, 482 U.S. at 348. This standard implies that a balancing test must be applied as between the prisoner's claims of constitutional infringement and the prison's need for internal order and security.

In *Turner*, the Supreme Court set forth four factors to consider in this area: (1) is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" (citation omitted), 482 U.S. at 89; (2) does the prisoner have alternate means of "exercising the right that remain open to prison inmates," *Id*. at 90; (3) what "impact" would "accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally," *Id*.; and (4) what "ready alternatives" to the prison regulation exist. *Id*.

This Court agrees that a prison regulation barring inmate library workers from working on personal matters while on duty is rationally connected to a legitimate penological objective. Specifically, it requires those prisoners to focus

on their job duties.  Since Plaintiff could work on his personal matters while not on duty, he had the alternative means required by *Turner*.  It also noted that if inmate library workers were permitted to ignore their assigned duties and could do as they please while on duty it would have an adverse impact on both prison staff and other prisoners.  Accordingly, I conclude that the underlying prison regulation satisfied the requirements of *Turner*.

This is not a case where a prisoner was punished  for exercising his right to freedom of speech, as has been suggested.  *See Castle v. Clymer*, 15 F. Supp.2d 640 (E. D. Pa. 1998).  Rather, the undisputed facts show that the confiscation of legal materials occurred because Plaintiff was engaging in personal activity when he was supposed to be performing duties related to his prison employment; he then attempted to cover up his misconduct.  Summary judgment will be granted with respect to the First Amendment claim.

## E.    Property Loss

As discussed above, Plaintiff's action seeks relief based upon his contention that the Defendants intentionally caused the loss of personal materials including a manuscript which he had written.  It is well settled that a civil rights claim cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act and where an adequate remedy exists

to compensate those who have suffered tortious loss. *Parratt v. Taylor*, 451 U.S. 527, 543-544 (1981). The United States Supreme Court extended *Parratt* to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy for any loss suffered to his or her property, a claim under § 1983 is not available. *Hudson v. Palmer*, 468 U.S. 517, 532-533 (1984).

In this matter, Plaintiff has alleged that there was an intentional seizure of his personal property. However, Aulisio may not obtain relief via a civil rights action for his loss of property if he has an adequate alternative remedy. As acknowledged by the Complaint, Aulisio has sought administrative relief regarding his purported loss of property via the DOC's multi-tiered administrative grievance system. Plaintiff can also file an action in Pennsylvania state court regarding his deprivation of personal property claim. Since Plaintiff has adequate post deprivation remedies, any claim for loss of personal property cannot proceed. *See Mattis v. Dohman*, 260 Fed. Appx. 458, 461 (3d Cir. 2008).

**F.    Conspiracy**

Plaintiff also asserts that the Defendants participated in a conspiracy to subject him to  a false misconduct charge and loss of his manuscript. Defendants contend that Plaintiff cannot prove a civil conspiracy. *See* Doc. 71, p. 14.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." *Rose*, 871 F.2d at 366. Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. *See D.R. by L.R.*, 972 F.2d at 1377; *Durre*, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. *Id.; Rose*, 871 F.2d at 366; *Young*, 926 F.2d at 1405 n.16; *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of

concerted activity. *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

Based upon the undisputed record, it is clear that Plaintiff has failed to state a viable conspiracy claim against any Defendant. Aulisio has not alleged any facts showing communication, cooperation, or command among any Defendants from which an agreement could be inferred. Rather, it appears to this Court that Aulisio is simply speculating that the alleged confiscation of his manuscript and an institutional misconduct charge was the result of a conspiracy because Defendant Chiampi's husband holds a supervisory position within the DOC. However, there are no averments of fact set forth in the Complaint that reasonably suggest the presence of an agreement or concerted activity between any correctional staff or state officials to violate Plaintiff's civil rights. The unsupported, speculative allegation of conspiracy cannot survive the request for summary judgment.

An appropriate Order follows.[6]


BY THE COURT:



*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[6] Also pending before the Court is Plaintiff's third motion seeking recusal of the undersigned. *See* Doc. 85.  For the same reasons set forth in this Court's December 9, 2015 and February 1, 2017 Orders, Plaintiff's latest request will likewise be denied

-25-